UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 25-02999-KK-MBKx** | Date: | November 14, 2025 |
|---|---|---|---|
| Title: | ***Teklehaimanot Tekeste Andemicael v. Kristi Noem et al.*** | | |

Present: The Honorable KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Twyla Freeman | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **(In Chambers) Order DENYING Petitioner's Motion for Preliminary Injunction and for a Temporary Restraining Order [Dkt. 3]**

## I.
## INTRODUCTION

On November 7, 2025, petitioner Teklehaimanot Tekeste Andemicael ("Petitioner"), who is currently detained in the custody of Immigration and Customs Enforcement ("ICE"), filed a Petition for Writ of Habeas Corpus ("Petition") against respondents Kristi Noem, Pamela J. Bondi, Thomas Giles, James Pilkington, and "Warden, Geo Group Inc, Adelanto Detention Facility" ("Respondents"). ECF Docket No. ("Dkt.") 1, Petition ("Pet."). On the same day, Petitioner filed the instant Motion for Preliminary Injunction and for a Temporary Restraining Order ("TRO") ("Motion"), seeking immediate release of Petitioner from custody and to enjoin Respondents from removing Petitioner from the United States or transferring Petitioner out of the Central District of California during the pendency of the litigation. Dkt. 3, Motion ("Mot.").

The Court finds this matter appropriate for resolution without oral argument. See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, Petitioner's Motion is **DENIED**.

## II.
## BACKGROUND

As alleged in the Petition, Petitioner is a citizen of Eritrea, which "is a totalitarian dictatorship, with one of the worst human rights records on the planet." Pet. at 3. Petitioner

"applied for asylum and related relief" but was denied in January 2019. Id. On January 29, 2019, an Immigration Judge ordered Petitioner's removal. Id. at 4. On June 27, 2019, the Board of Immigration Appeals denied Petitioner's appeal. Id. Since then, Petitioner "has been subject to a final order of removal[.]" Id. at 3.

On July 11, 2019, Petitioner completed a visa and passport application for Eritrea. Dkt. 8-1 ("Preciado Decl.") ¶ 8. A travel document for removal to Eritrea was received on October 16, 2019, with an expiration date on October 7, 2020. Id. ¶ 9. Petitioner was scheduled for removal on January 6, 2020, but was returned to the Otay Mesa Detention Center after failing to comply with his removal. Id. ¶¶ 10-11. On March 4, 2020, Petitioner's removal was cancelled. Id. ¶ 12. On November 18, 2020, a new request for travel documents was made, but on January 20, 2021, the Enforcement and Removal Operations was advised that the issuance of the travel documents was delayed due to COVID. Id. ¶¶ 15-16. On March 11, 2021, Petitioner was released from ICE custody and placed on Alternatives to Detention. Id. ¶ 17. "Pursuant to that supervision, [Petitioner] ha[d] been reporting to ICE and renewing his work permits annually." Pet. at 3.

On January 26, 2025, Petitioner was re-detained by ICE in Seattle, Washington. Preciado Decl. ¶ 19. On June 6, 2025, Petitioner was transferred to the Adelanto detention center. Id. Petitioner has since then been in ICE custody. Pet. at 3.

On November 7, 2025, Petitioner filed the operative Petition against Respondents, raising the following grounds for relief:

1. **Ground One:** Unlawful Detention, in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution; and
2. **Ground Two:** Unlawful Potential Removal to a Third Country, in violation of the Due Process Clause.

Id. at 5-6. Specifically, Petitioner argues there is no significant likelihood of Petitioner's removal to Eritrea in the foreseeable future, and that, to the extent Petitioner's detention is intended to facilitate his removal to a third country, such a removal would violate his due process rights. Id.

On the same day, Petitioner filed the instant Motion, seeking Petitioner's immediate release from custody and enjoining Respondents from removing Petitioner from the United States or transferring him out of this District during the pendency of the instant action. Mot. at 3.

On November 11, 2025, at the request of the Court, dkt. 6, Respondents filed an Opposition.[1] Dkt. 8, Opposition ("Opp."). In support, Respondents submit a declaration by Jorge

---

[1] Respondents also argue the Court should deny Petitioner's Motion for failing to comply with L.R. 65-1 and 7-19, as well as Federal Rule of Civil Procedure 65(b)(1) ("Rule 65(b)(1)"). Opp. at 4-5. However, "[a] district court has discretion to assess the TRO application's merits even after determining that it does not comply with the Local Rule's procedural requirements." Bennett v. Ponce, No. CV 18-04996-VBF-ASx, 2019 WL 8589408, at *1 (C.D. Cal. Jan. 24, 2019) (citations omitted). Additionally, Rule 65(b)(1) permits the issuance of a TRO without notice only if the movant satisfies the requisite affidavit and certification requirements. Fed. R. Civ. P. 65(b)(1)(A)-(B). Here, the Court has afforded Respondents an opportunity to respond, dkt. 6, and Respondents

George Preciado, a Deportation Officer assigned to ICE's office in Adelanto, California.  Preciado Decl.  Respondents maintain Petitioner's continuous detention was due to his refusal to cooperate and comply with instructions for the issuance of his travel documents to Eritrea.  Opp. at 5-7.

On November 12, 2025, Petitioner filed a Reply.  Dkt. 9, Reply.

This matter, thus, stands submitted.

## III.
## LEGAL STANDARD

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction.  See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001).  Under Federal Rule of Civil Procedure 65, the Court may grant a temporary restraining order to prevent "immediate and irreparable injury."  Fed. R. Civ. P. 65(b)(1)(A).  Like a preliminary injunction, a temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) (citation omitted).

The party seeking such relief must establish: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities weighs in its favor; and (4) the injunction is in the public interest ("Winter factors").  See id. at 20.  Courts in the Ninth Circuit also employ "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the Winter standard."  Fraihat v. U.S. Immigr. & Customs Enf't, 16 F.4th 613, 635 (9th Cir. 2021) (citation modified).  Under the serious questions standard, the four Winter elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another."  All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011).  Thus, a TRO may be warranted where there are "'serious questions going to the merits' and a hardship balance . . . that tips sharply toward the plaintiff," and so long as the other Winter factors are also met.  Id. at 1132.

Additionally, while "[p]rohibitory injunctions preserve the status quo," Dam v. Hodges, No. CV 18-6757-DMG-PLAx, 2019 WL 2610957, at *2 (C.D. Cal. Apr. 19, 2019) (citations omitted), mandatory injunctions order "a responsible party to take action."  Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015) (citations and quotation marks omitted).  Thus, because mandatory injunctions "go[ ] well beyond simply maintaining the status quo," they are "particularly disfavored."  Id. (citations and quotation marks omitted).  When seeking mandatory injunctive relief, a plaintiff must "establish that the law and facts clearly favor [the plaintiff's] position, not simply that [the plaintiff] is likely to succeed."  Dam, 2019 WL 2610957, at *2 (citation omitted).  "[M]andatory injunctions are not granted unless extreme or very serious damage will result."  Am. Freedom Def. Initiative v. King Cnty., 796 F.3d 1165, 1173 (9th Cir. 2015) (citations and quotation marks omitted).

///

---

submitted their Opposition, dkt. 8.  Accordingly, Respondents cannot claim lack of actual notice of Petitioner's Motion.  The Court thus proceeds to address the Motion on its merits.

## IV.
## PETITIONER'S REQUEST FOR INJUNCTIVE RELIEF IS DENIED

As an initial matter, although the statutory basis upon which Petitioner is being held in detention pending his removal is unclear, it appears Petitioner is challenging his detention under 8 U.S.C. § 1231 ("Section 1231"). Pet. at 5 (citing Section 1231 for the proposition "the immigration detention statute 'does not permit indefinite detention'"). Accordingly, the Court applies the framework under Section 1231.

A.     APPLICABLE LAW

"Freedom from imprisonment . . . lies at the heart of the liberty" that the Fifth Amendment's Due Process Clause protects. Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." Id. at 693. Section 1231(a) governs the detention, release, and removal of noncitizens with an order of removal. Under Section 1231(a), a noncitizen who has been ordered removed must be detained during the 90-day removal period. 8 U.S.C. §§ 1231(a)(1)(A), 1231(a)(2)(A). After the 90-day removal period, "the Government 'may' continue to detain an alien who still remains here or release that alien under supervision." Zadvydas, 533 U.S. at 683 (quoting Section 1231(a)(6)). But Section 1231(a)(6) includes an implicit limit on "an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Id. at 689. Recognizing constitutional concerns raised by such prolonged detention, the Supreme Court observed "Congress previously doubted the constitutionality of detention for more than six months," and therefore, "for the sake of uniform administration in the federal courts," established a presumptively reasonable six-month period for post-removal-order detention. Id. at 701.

After the six-month period, if a noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id. However, a noncitizen still "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. The Ninth Court has held there is no significant likelihood of removal where "no country would accept the deportees, or the United States lacked an extradition treaty with their receiving countries." Prieto-Romero v. Clark, 534 F.3d 1053, 1063 (9th Cir. 2008) (citing Zadvydas, 533 U.S. at 699). On the other hand, where the government introduces evidence showing that repatriation to petitioner's country of origin is routine and can be promptly effectuated, removal is foreseeable. Id.; see also Diouf v. Mukasey, 542 F.3d 1222, 1233 (9th Cir. 2008) (holding petitioner failed to show no significant likelihood of removal where ICE had twice arranged his removal but he was not removed solely due to his refusal to cooperate, and the absence of a definite end date did not alter the analysis).

Additionally, where a petitioner "impedes INS removal effort," the Ninth Circuit has found the petitioner failed to meet the Zadvydas burden. See Pelich v. Immigr. & Naturalization Serv., 329 F.3d 1057, 1059 (9th Cir. 2003) (noting that unlike the noncitizens in Zadvydas, the petitioner "is responsible for his plight" because petitioner "has steadfastly refused to fill out a Polish passport application, which directly impedes Poland's ability to determine whether [petitioner] qualifies for Polish travel documents"); Lema v. Immigr. & Naturalization Serv., 341 F.3d 853, 857 (9th Cir. 2003) (ruling petitioner failed to show no significant likelihood of removal where his country's

continued refusal to issue travel documents stemmed from his own non-cooperation, including failing to substantiate his nationality, failing to submit a new travel-document request, failing to contact the consulate, and refusing to provide documents requested by INS).

**B.    ANALYSIS**

Here, Petitioner fails to meet his burden of establishing there is no significant likelihood of removal in the reasonably foreseeable future. Zadvydas, 533 U.S. at 701.

Petitioner argues he has been under ICE detention for over nine months, beyond the presumptively reasonable six months detention under Zadvydas, and therefore, should be released as there is no significant likelihood of removal in the reasonably foreseeable future.[2]  Pet. at 5. However, Respondents contend Petitioner fails to establish there is no significant likelihood of removal because the evidence establishes Petitioner failed to cooperate and there is an ongoing effort in removal arrangements with Eritrea. Opp. at 6 ("ICE has taken repeated steps to have Petitioner comply with obtaining a travel document. Petitioner has repeatedly refused to comply with these attempts.")  In support, Officer Preciado declared "on or about July 8, 2025, [Petitioner] refused to cooperate with his interview for a travel document or to answer any questions with respect to his travel interview." Preciado Decl. ¶ 21.  Further, although unclear how, "[a] request for a travel document was completed without [Petitioner's] assistance on or about July 17, 2025." Id. ¶ 23.  Since then, several "instructions to comply with issuance for a travel document" and "[Failure to Comply] Memo[s]" were served on [Petitioner][.]" Id. ¶¶ 24-31.  In reply, Petitioner failed to provide any evidence establishing Petitioner cooperated with Respondents' travel document requests.  Additionally, like in Diouf, Respondents' evidence shows the Government had previously successfully completed the arrangement and travel documents for Petitioner's removal to Eritrea, but Petitioner failed to comply with his removal. Id. ¶¶ 8-11; see 542 F.3d at 1233.  Hence, "there is no evidence that [Petitioner] is unremovable because the destination country will not accept him or his removal is barred by our own laws." Prieto-Romero, 534 F.3d at 1063.  Accordingly, Petitioner fails to meet his burden under Zadvydas. See Jupiter v. McAleenan, No. EDCV 19-2044-DOC-SKx, 2020 WL 4919712, at *2 (C.D. Cal. July 10, 2020) (finding petitioner failed to meet his Zadvydas burden where the consulate was "continuing its efforts to obtain travel documents," petitioner showed no evidence those efforts would be futile, and his non-cooperation caused the delay).

Accordingly, Plaintiff is not entitled to injunctive relief, as he has not presented sufficient evidence demonstrating a likelihood of success on the merits or that the law and facts clearly favor his position.[3]  See Winter, 555 U.S. at 20; Dam, 2019 WL 2610957, at *2.  Petitioner's request for

---

[2] The Court notes Petitioner does not challenge the validity of his final removal order.

[3] With respect to Petitioner's third country removal claim, there is no evidence before the Court showing Respondents seek to remove Petitioner to a third country. See Pet. For example, Petitioner does not present evidence of statements by ICE officials suggesting they are considering removal to a third country. Compare Pet. at 6 (alleging "[t]o the extent that [Petitioner's] detention is meant to facilitate his removal to a third country . . . , if such a removal is accomplished in violation of his due-process rights, then his detention is illegal") with Delkash v. Noem, No. EDCV-25-01675-HDV-AGRx, 2025 WL 2683988, at *2 (C.D. Cal. Aug. 28, 2025) (stating ICE officers told the petitioner they planned to remove him to South Sudan), and Nadari v. Bondi, No. CV-25-07893-JLS-BFMx, 2025 WL 2934514, at *3 (C.D. Cal. Sep. 3, 2025) (stating an ICE official informed the

injunctive relief is, therefore, **DENIED**.  However, Petitioner may present a renewed application with supporting evidence.

## V.
## CONCLUSION

For the reasons set forth above, Petitioner's Motion is **DENIED** without prejudice to renewal.

However, to preserve the Court's jurisdiction and to ensure Petitioner has adequate access to legal counsel pending a ruling on the Petition, the Court **ORDERS** Petitioner shall not be transferred except to a facility within this District, absent further order from this Court, except to effectuate Petitioner's final removal order to his country of origin.  See Cal. Energy Comm'n v. Johnson, 767 F.2d 631, 634 (9th Cir. 1985) ("The All Writs Act, 28 U.S.C. § 1651(a), empowers the federal courts to issue writs of mandamus necessary to protect their prospective jurisdiction."); Prior v. Andrews, No. 1:25-CV-01131 JLT EPG, 2025 WL 2675569, at *6 (E.D. Cal. Sept. 18, 2025) (denying petitioner's motion for a TRO but enjoining the Government from transferring petitioner out of the District without further order from the court).

**IT IS SO ORDERED**.

---

petitioner's counsel that an officer would decide where the petitioner would be removed).  Similarly, Petitioner does not present evidence showing he cannot be removed to Eritrea or of other similarly situated individuals who have been removed to third countries without notice.  See, e.g., Delkash, 2025 WL 2683988, at *3 (noting the petitioner was granted withholding of removal to his home country); Esmail v. Noem, No. CV-25-08325-WLH-RAOx, 2025 WL 3030589, at *5 n.8 (C.D. Cal. Sep. 26, 2025) (noting the petitioner had an order deferring removal to his home country and therefore was "inherently at risk of removal" to a third country); Nguyen v. Scott, No. 2:25-CV-01398, 2025 WL 2419288, at *26-27 (W.D. Wash. Aug. 21, 2025) (reviewing evidence concerning similarly situated individuals).  Accordingly, to the extent Petitioner requests that Respondents be enjoined from removing him to a third country, Petitioner's request is **DENIED**.  Nonetheless, the Court recognizes Petitioner's fears concerning third country removal, and Petitioner may present his third country removal claim in a renewed application if he obtains supporting evidence.